# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **EARNEST DALE FAIRCHILDS,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| vs. | ) Case No. 07-CV-337-TCK-FHM |
| | ) |
| **CHARLES RAY, Warden;** | ) |
| **ATTORNEY GENERAL OF THE** | ) |
| **STATE OF OKLAHOMA,** | ) |
| | ) |
| **Respondents.** | ) |

## OPINION AND ORDER

Before the Court is Petitioner's 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 2). Petitioner is a state inmate and is represented by counsel. Respondent filed a response (Dkt. # 6) to the petition and provided the state court record (Dkt. #s 6, 7, 8) for the Court's use in resolving the claims raised in the petition. Petitioner did not file a reply to the response. For the reasons discussed below, the Court finds the petition for writ of habeas corpus should be denied.

## *BACKGROUND*

On July 28, 2004, law enforcement authorities, under the direction of Bryant Knox, an agent with the Oklahoma Bureau of Narcotics, executed a search warrant at a residence located outside of Terlton in Pawnee County, Oklahoma. The search warrant authorized seizure of methamphetamine, drug paraphernalia, records, currency, safes, photographs, and items of personal property tending to establish identity. When the authorities arrived at the residence, Petitioner Earnest Dale Fairchilds was outside in a car parked on the driveway. Authorities proceeded to gain entry to the residence. They received no response to their "knock and announce," and a battering ram was used to breach the door. A woman, identified as Tina Chinchilla, was found in a downstairs room described as an office. In the office, the authorities discovered a safe holding baggies of a

substance later identified as methamphetamine, electronic scales, a money counting machine, a black notebook itemizing transactions, a personal telephone book, a money box containing $2,830 cash, more baggies of methamphetamine, and a baggie containing marijuana. The weight of the methamphetamine recovered at the residence totaled 125.8 grams, or approximately 4 ounces. The residence was equipped with a security surveillance system with monitors in the office. Thumbtacked to the wall of the office was a letter with Petitioner's name on it stating that he lived at the address of the residence, Route 1, Box 136, Terlton, Oklahoma. Officers also found two (2) firearms in a bedroom located about 20-30 feet from the office. One was a 20 gauge shotgun, chamber-loaded with two shells in the magazine. The other was a .22 caliber handgun.

As a result of those events, Petitioner Earnest Dale Fairchilds was charged in Pawnee County District Court, Case No. CF-2004-92, with Trafficking in Methamphetamine (Count 1), Possession of a Firearm in the Commission of a Felony (Count 2), and Possession of Drug Paraphernalia (Count 3). At the conclusion of his two-stage jury trial, Petitioner was found guilty of Counts 1 and 2, after former conviction of a felony, and guilty of Count 3. On May 13, 2005, the trial judge sentenced Petitioner in accordance with the jury's recommendation to 35 years imprisonment and a $100,000 fine on Count 1, 20 years imprisonment and a $10,000 fine on Count 2, and one year and a $1,000 fine on Count 3. The sentences were ordered to be served concurrently. During trial proceedings, Petitioner was represented by attorney Kent R. Hudson.

Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals ("OCCA"). On direct appeal, Petitioner, represented by attorney Bill Zuhdi, raised the following four (4) propositions of error:

> Proposition 1: The trial court committed reversible error in failing to give the requested jury instruction of impeachment by prior inconsistent statements, thereby

> violating Mr. Fairchilds' rights to due process under the United States Constitution.
>
> Proposition 2: The evidence was insufficient to sustain Fairchilds' convictions therefore, Fairchilds' convictions violated the due process clause of the 14th Amendment of the U.S. Constitution and Article 2, Section 7 of the Oklahoma Constitution.
>
> Proposition 3: The trial court committed reversible error when it wrongly shifted the burden of proof to Mr. Fairchilds in violation of the 5th and 6th Amendments to the United States Constitution and Article 2, Section 7, of the Oklahoma Constitution.
>
> Proposition 4: The trial errors complained of herein cumulatively denied Mr. Fairchilds' right to a fair trial under the United States and Oklahoma Constitutions and therefore, his convictions and sentences must be reversed.

(Dkt. # 6, Ex. 1). On August 29, 2006, in Case No. F-2005-512, the OCCA rejected Petitioner's claims and affirmed the Judgments and Sentences of the trial court. See Dkt. # 6, Ex. 3. Petitioner did not file a petition for writ of *certiorari* at the United States Supreme Court nor did he seek post-conviction relief in the state courts.

On June 20, 2007, Petitioner filed his federal petition for writ of habeas corpus (Dkt. # 2) and supporting brief (Dkt. # 3). Petitioner raises the same four propositions of error he raised on direct appeal. (Dkt. # 2). Respondent filed a response (Dkt. # 6) to the petition and asserts that under 28 U.S.C. § 2254(d), Petitioner is not entitled to habeas corpus relief.

## *ANALYSIS*

### A. Exhaustion/Evidentiary Hearing

Before addressing the claims raised in the petition, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Respondent concedes, see Dkt. # 6, and the Court agrees that Petitioner's claims raised in the petition were presented to the OCCA on direct appeal and are exhausted.

3

The Court also finds that Petitioner is not entitled to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000).

**B. Claims adjudicated by the OCCA**

When a state court has adjudicated a constitutional claim, a petitioner may obtain federal habeas relief only if the state decision "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Bell v. Cone, 535 U.S. 685, 694 (2002); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). In this case, the OCCA adjudicated Petitioner's claims on direct appeal. Therefore, the claims shall be reviewed pursuant to 28 U.S.C. § 2254(d).

*1. Failure to instruct (ground 1)*

As his first proposition of error, Petitioner claims that the trial court erred by refusing to give the jury an instruction concerning impeachment by prior inconsistent statements. Defense counsel requested the instruction based on the testimony of state's witness Bryant Knox. Petitioner claims that during the preliminary hearing, Agent Knox testified that no men's clothing was found at the residence, but that at trial, Agent Knox testified that one of the agents involved in the search of the residence observed men's clothing in an upstairs bedroom. On direct appeal, the OCCA cited state law and determined that "as the witness neither made nor was impeached with any inconsistent

4

statements, the trial court did not abuse its discretion in refusing to give Fairchilds's requested instruction." See Dkt. # 6, Ex. 3 (footnote omitted).

"A habeas petitioner is only entitled to relief . . . for alleged violations of federal rights, not for errors of state law." Bullock v. Carver, 297 F.3d 1036, 1055 (10th Cir. 2002) (citation omitted). When an allegedly erroneous jury instruction is given, this Court examines only "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). Stated another way, "'[h]abeas proceedings may not be used to set aside a state conviction on the basis of erroneous jury instructions unless the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense.'" Shafer v. Stratton, 906 F.2d 506, 508 (10th Cir. 1990) (quoting Brinlee v. Crisp, 608 F.2d 839, 854 (10th Cir. 1979)). Furthermore, where a petitioner challenges the trial court's refusal or failure to give a specific instruction, this Court uses a highly deferential standard of review in evaluating the alleged error. Tyler v. Nelson, 163 F.3d 1222, 1227 (10th Cir. 1999). The burden on a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction is especially great because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

Upon review of the record in this case, the Court agrees with the OCCA that the witness neither made nor was impeached with an inconsistent statement. At preliminary hearing, Agent Knox stated "I didn't find any men's clothing." See Dkt. # 8, Trans. Prelim. Hr'g at 36. At trial, Agent Knox testified that Agent Kevin Ottwell found men's clothing. See Dkt. # 8, Tr. Trans. Vol.

5

I at 149. The statements are not inconsistent. Even if Agent Knox did not become aware that Agent Ottwell had observed items of clothing for an adult male in one of the bedrooms until a few days before trial, his testimony was not inconsistent. Furthermore, even if Agent Knox's statements could be characterized as inconsistent, his trial testimony was not impeached. See id. at 152. Therefore, Petitioner's trial was not rendered fundamentally unfair by the trial court's refusal to issue the requested instruction. The OCCA's affirmance of Petitioner's conviction and sentence therefore did not violate clearly established federal law. Petitioner is not entitled to habeas corpus relief on this claim. 28 U.S.C. § 2254(d).

### *2. Insufficient evidence (ground 2)*

Petitioner also claims that the state presented insufficient evidence to establish his guilt beyond a reasonable doubt. Petitioner's argument is premised on his contention that the State failed to prove he exercised dominion and control over the residence, the drugs, the drug paraphernalia, and the firearms. See Dkt. # 3. The OCCA adjudicated this claim as a part of Petitioner's direct appeal, finding that "any rational trier of fact could find beyond a reasonable doubt that Fairchilds possessed the drugs and paraphernalia which were the basis for Counts I and III. We further find beyond a reasonable doubt that Fairchilds possessed the weapons in the house while committing the felony of trafficking in methamphetamine." (Dkt. # 6, Ex. 3). In footnote 2 of the direct appeal opinion, the OCCA further stated that:

> Possession can be actual or constructive, and joint possession may be proved by circumstantial evidence that the defendant has dominion and control over the drugs; the State must show more than mere proximity, but must introduce facts from which a jury could infer dominion and control. Fairchilds rented the house, and held himself out as living there since the beginning of July. There were men's clothes in the bedroom. A printed draft of a letter with his name in the signature block was tacked to a wall over the desk in the office, where the drugs were found. The original of that letter, signed by Fairchilds, was admitted into evidence, and Fairchilds told

6

> a witness he wrote it. Jurors could infer dominion and control from this circumstantial evidence.

Dkt. # 3, Ex. 3 at n.2 (citations omitted). In footnote 3 of the opinion, the OCCA wrote that:

> A loaded shotgun and unloaded rifle were found in the bedroom closet adjacent to the downstairs office. The office had large amounts of cash and drugs, with video monitors for an extensive outdoor surveillance system. The guns were in a position where they could be easily located and used during an offense, could have been used in the event of a contingency, or could have been used constituting a threat or harm.

Id. at n.3 (citations omitted). Respondent asserts that the OCCA's decision was not contrary to, or an unreasonable application of, federal law. See Dkt. # 11.

As stated above, a writ of habeas corpus will not be issued unless the state court's legal conclusions are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or the state court's factual conclusions are "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," Id. at § 2254(d)(2). "[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Tenth Circuit authority is divided as to "whether, under AEDPA, we review a sufficiency-of-the-evidence issue as a legal determination under 28 U.S.C. § 2254(d)(1) or a factual finding under § 2254(d)(2) and (e)(1)." Romano v. Gibson, 239 F.3d 1156, 1164 n.2 (10th Cir. 2001); see also Dockins v. Hines, 374 F.3d 935, 939 (10th Cir. 2004); Torres v. Mullin, 317 F.3d 1145, 1151 (10th Cir. 2003). Under either standard, Petitioner's claim in this case fails.

In a habeas proceeding, this Court must review the sufficiency of the evidence "in the light most favorable to the prosecution" and ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This standard of review respects the responsibility of the trier of fact to resolve conflicts in

the testimony, to weigh the evidence, and to draw reasonable inferences from the testimony presented at trial. Jackson, 443 U.S. at 319. Both direct and circumstantial evidence are considered in determining whether evidence is sufficient to support a conviction. Lucero v. Kerby, 133 F.3d 1299, 1312 (10th Cir. 1998). In evaluating the evidence presented at trial, the Court does not weigh conflicting evidence or consider witness credibility. Wingfield v. Massie, 122 F.3d 1329, 1332 (10th Cir. 1997); Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996). Instead, the Court must view the evidence in the "light most favorable to the prosecution," Jackson, 443 U.S. at 319, and "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993). Further, the Court evaluates the sufficiency of the evidence by "consider[ing] the collective inferences to be drawn from the evidence as a whole." United States v. Wilson, 107 F.3d 774, 778 (10th Cir. 1997) (quoting United States v. Hooks, 780 F.2d 1526, 1532 (10th Cir. 1986)). Under the AEDPA, the Court must decide whether the OCCA's decision that there was sufficient evidence to support a finding of guilt was contrary to or an unreasonable application of Jackson. See 28 U.S.C. § 2254(d)(1); Spears v. Mullin, 343 F.3d 1215, 1238-39 (10th Cir. 2003).

Applying this standard, this Court concludes that there was sufficient evidence for a rational trier of fact to find Petitioner guilty of Trafficking in Methamphetamine, Possession of a Firearm in the Commission of a Felony, and Possession of Drug Paraphernalia beyond a reasonable doubt. Under Oklahoma law as applicable to the facts of this case, Petitioner could not be convicted of Trafficking in Illegal Drugs unless the State proved beyond a reasonable doubt the following elements: (1) knowing, (2) distribution, manufacture, bringing into the state, or possession, (3) at least twenty (20) grams of methamphetamine. See Okla. Stat. tit. 63, § 2-415(C)(4). Petitioner could

not be convicted of Possession of a Firearm During the Commission of a Felony unless the State proved beyond a reasonable doubt the following elements: (1) knowing, (2) willful, (3) possession of, (4) a firearm, (5) while committing the felony of Trafficking in Illegal Drugs, (6) having the elements listed above, and (7) the possession of the weapon was connected to the commission of the felony. See Okla. Stat. tit. 21, § 1287; OUJI-CR 2d 6-38. Petitioner argues that there was insufficient evidence linking him to the firearms recovered from the house and nothing established a connection between the firearm and the underlying felony. Lastly, Petitioner could not be convicted of Possession of Drug Paraphernalia unless the State proved beyond a reasonable doubt the following elements: (1) knowing, (2) possession of drug paraphernalia, (3) to ingest, (4) the controlled dangerous substance of methamphetamine. See Okla. Stat. tit. 63, § 2-405; OUJI-CR 2d 6-7.

"[P]ossession may be either actual or constructive, and need not be exclusive as long as there is proof that the defendant knowingly and willfully shared the right to control the dangerous substance." White v. State, 900 P.2d 982, 986 (Okla. Crim. App. 1995) (internal quotation marks omitted). "[W]hile proof of [the defendant's] mere proximity [to the contraband] is insufficient to circumstantially show constructive possession, the proof of additional independent factors from which the possession may be fairly inferred may be established by circumstantial evidence and will be sufficient to carry the case to the jury." Gilreath v. State, 627 P.2d 443, 445 (Okla. Crim. App. 1981); see also Hill v. Cody, 5 F.3d 546 (10th Cir. 1993) (unpublished) (discussing and applying Oklahoma law). When law enforcement officials arrived at the scene, Petitioner was on the driveway of the house and denied having knowledge of the presence of methamphetamine and firearms. Nonetheless, there were sufficient "independent factors" to support the "knowingly

9

possess" element required for all three of the convictions. The state presented circumstantial evidence demonstrating that Petitioner lived at the residence where the methamphetamine and firearms were recovered. That evidence included the following: Petitioner was present outside the residence when authorities arrived, see Dkt. # 8, Tr. Trans. Vol. I at 36-38, 98; a letter signed by Petitioner showing the address for the residence as his mailing address was found thumbtacked to the wall of the office, see id. at 120-21; items of men's clothing were observed in an upstairs bedroom of the residence, see id. at 199-200; telephone company employees testified that Petitioner placed an order for telephone service at the residence in his name, assured them that he lived there, and presented a rental agreement effective July 1, 2004, as evidence that he lived at the residence, id. Tr. Trans. Vol. II at 34, 46, 48. The Court concludes that this evidence, when viewed in a light most favorable to the State, was sufficient to allow a rational trier of fact to have found beyond a reasonable doubt that Petitioner knowingly had dominion and control over the methamphetamine, drug paraphernalia, and firearms found in the residence. Petitioner has failed to demonstrate that the OCCA's resolution of this claim was contrary to, or involved an unreasonable application of Jackson.

As to Petitioner's claim challenging the sufficiency of the evidence providing a nexus between the weapons and the commission of the felony of trafficking in methamphetamine, the Court finds that the evidence, when viewed in a light most favorable to the State, was sufficient to allow a rational trier of fact to have found beyond a reasonable doubt that Petitioner possessed the firearms while in the commission of the felony offense of trafficking in methamphetamine. That evidence includes the following: testimony that the weapons were found in a closet 25-30 feet away from the office where the methamphetamine was stored and that the shotgun was chamber-loaded,

see Dkt. # 8, Tr. Trans. Vol. I at 124-25, and that the house was monitored with an extensive surveillance system, see id. at 44.

In summary, the Court therefore finds that the OCCA's resolution of Petitioner's challenges to the sufficiency of the evidence was not contrary to or an unreasonable application of federal law, 28 U.S.C. § 2254(d)(1), or an unreasonable determination of the facts, 28 U.S.C. § 2254(d)(2). See Dockins, 374 F.3d at 939. As a result, habeas corpus relief shall be denied on this claim.

### *3. Opening instruction shifted burden of proof (ground 3)*

As his third proposition of error, Petitioner argues that the trial court's opening instruction to the jury required Petitioner to present evidence to prove his innocence, thereby unconstitutionally shifted the burden of proof to Petitioner. See Dkt. # 2. Specifically, Petitioner complains that his jury was instructed that "[i]t is the responsibility of the attorneys to present evidence, to examine and cross-examine witnesses, . . . ." See Dkt. # 3. The OCCA rejected this claim on direct appeal, citing state law and stating that "the opening uniform jury instruction, defining events in the trial and explaining the roles of the parties, and instructing on the presumption of innocence and the State's burden of proof, does not shift the burden of proof to the defendant, and its use was not plain error." See Dkt. # 6, Ex. 3 (footnote omitted).

The Court agrees with the OCCA that when the remarks of the trial judge and all the instructions are taken as a whole, see Dkt. # 8, Tr. Trans. Vol. I at 9-14, O.R. at 168-206, there is no question but that the burden of proving guilt beyond a reasonable doubt was shouldered by the state, and the jury properly deliberated with this mandate firmly in mind. Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was contrary to or an unreasonable application of Supreme Court law. He is not entitled to habeas corpus relief on this claim.

*4. Cumulative error (ground 4)*

As his fourth proposition of error, Petitioner alleges that the cumulative effect of trial errors deprived him of a fair trial. See Dkt. # 2. The OCCA rejected this claim, citing Alverson v. State, 983 P.2d 498, 520 (Okla. Crim. App. 1999), and finding that "there is no cumulative error." See Dkt. # 6, Ex. 3.

The Tenth Circuit Court of Appeals has repeatedly held that cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990)). Having rejected each of Petitioner's habeas claims, the Court finds no basis for a cumulative error analysis. The OCCA's resolution of Petitioner's cumulative error claim was not an unreasonable application of federal law. Petitioner is not entitled to relief on this ground. 28 U.S.C. § 2254(d).

## *CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States. His petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The petition for a writ of habeas corpus (Dkt. # 2) is **denied**.

2. A separate Judgment shall be entered in this case.

DATED THIS 13th day of September, 2010.

TERENCE C. KERN
UNITED STATES DISTRICT JUDGE